UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FEDERAL INSURANCE COMPANY and LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>TDS METROCOM, LLC,<br><br>Defendants. | Case No.: 1:22-cv-00339-CRK<br><br>MEMORANDUM DECISION AND ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT |

## INTRODUCTION

Before the Court is Plaintiffs' Federal Insurance Company and Liberty Mutual Insurance Company ("Sureties") motion for partial summary judgment. See Pls.' Mot. Partial Summ. J., Oct. 10, 2022, ECF No. 14 ("Pls.' Mot.") and accompanying Memo. Suppt. Pls.' Mot. Partial Summ. J., Oct. 10, 2022, ECF No. 14-1 ("Pls.' Br."). Sureties seek a declaratory judgment against Defendant TDS Metrocom, LLC ("TDS") stating that three performance bonds[1] posted by Sureties for the benefit of TDS are null and void. Pls.' Mot. at 1–2. For the following reasons, the Court denies Sureties' motion.

## BACKGROUND

The following facts are not in dispute. In 2020, Sureties, TDS, and Quanta Telecommunications Services, LLC ("Quanta") entered into an agreement to construct fiber optic networks in Washington and Idaho. Compl. for Breach of

---

[1] Bond Nos. K40432899-906223849, K40432851-906223850, and K40432863-906223845. Pl.s' Mot. at 2.

MEMORANDUM DECISION AND ORDER - 1

1:22-cv-00339-CRK

Contract and Declaratory J., ¶ 8, Aug. 9, 2022, ECF No. 1 ("Compl."); see Def. [TDS's] Separate Statement Mat. Facts in Disp., ¶ 4, Oct. 31, 2022, ECF No. 24 ("Def.'s Facts").  In connection with this work ("the projects"), Sureties posted three bonds, with Quanta as principal and TDS as obligee.  Pls.' Separate Statement Mat. Facts not in Dispute, ¶ 5, Oct. 10, 2022, ECF No. 15 ("Pls.' Facts"); see Def.'s Facts ¶ 4.  The substantive language of the three bonds is identical, and incorporates by reference a master agreement also signed by the parties.  See Decl. of Jan D. Sokol Suppt. Pl.s' Mot. Partial Summ. J., Ex. A, B, C, Oct. 10, 2022, ECF Nos. 16-1, 16-2, 16-3 ("Bonds No. 1, 2 & 3") (generally "Sokol Decl."); Sokol Decl., Ex. D, Oct. 10, 2022, ECF No. 16-4 ("Master Agreement"); see Def.'s Facts ¶ 16.  The bonds each contain the following language:

> Upon default and termination of the Contractor's right to proceed and notice to the Contractor and Surety as provided in Paragraph 2 above, the Surety shall within 30 days proceed to take one or, at its option, more than one of the following courses of action:
>
> (a) Proceed itself or through others acting on its behalf, to complete full performance of the Construction Contract including, without limitation, correction of defective and nonconforming work performed by or on behalf of the Contractor.

Bonds No. 1, 2 & 3 ¶ 3; see Def.'s Facts ¶ 16.  In addition to this election provided to the Sureties, the Master Agreement, which is incorporated into the bonds through ¶ 1 of each bond, provides the following election for the obligee:

> If default shall be made by the Contractor . . . [and] Contractor does not correct, or make arrangement to correct, such default in a manner which is satisfactory . . . TDS may (a) terminate the Contract and the Contractor and its surety or sureties shall be liable to TDS for any costs and damages occasioned thereby; or (b) take over the construction of a Project and prosecute the same to completion by contract or otherwise for the account and at the expense of the Contractor . . . .

**MEMORANDUM DECISION AND ORDER - 2**

1:22-cv-00339-CRK

Master Agreement ¶ 7.1; see Def.'s Facts ¶ 16.  In May 2022, pursuant to this provision, TDS notified Quanta and the Sureties that Quanta was in default on the projects, and had 30 days to correct the default.  Pls.' Facts ¶ 12; see Def.'s Facts ¶ 6.

In June and July 2022, after 30 days had elapsed since each notice of default, TDS informed Quanta and the Sureties that "Quanta and its subcontractors are no longer authorized, or allowed, to perform work" on the projects, and that TDS "is taking over for cause."  Sokol Decl., Ex. M, N, O, Oct. 10, 2022, ECF Nos. 16-13, 16-14, 16-15 ("Ltrs. 13–15"); see Def.'s Facts ¶ 8.  Sureties responded by letter to TDS on July 8, stating that "TDS unilaterally and in violation of the performance bonds, declared its intent to take over Build Orders 1, 2 and 3, thereby depriving the Sureties of its rights under the bonds . . . thus the bonds are void."  Sokol Decl., Ex. P, Oct. 10, 2022, ECF No. 16-16 ("Ltr. 16"); see Def.'s Facts ¶ 9.  Three days later, TDS answered Sureties' letter, clarifying that "[Ltrs. 13–15] did not state that the Sureties were not allowed to fulfill their obligations under the bonds.  To the contrary, the Letters . . . in fact triggered a 30-day period within which time the Sureties are obligated to take one or more actions."  Sokol Decl., Ex. Q, Oct. 10, 2022, ECF No. 16-17 ("Ltr. 17"); see Def.'s Facts ¶ 10.  Four days later, Sureties wrote back, requesting a 60-day extension to make their election under ¶ 3, and requesting information about the projects from TDS.  Sokol Decl., Ex. R, Oct. 10, 2022, ECF No. 16-18 ("Ltr. 18"); see Def.'s Facts ¶ 11.  TDS refused Sureties request for information and more time.  Sokol Decl., Ex. S, Oct. 10, 2022, ECF No. 16-19 ("Ltr. 19"); see Def.'s Facts ¶ 12. Sureties then exercised their rights under ¶ 3 to take over the projects themselves, and chose Quanta, the

defaulted contractor, as the completion contractor. Sokol Decl., Ex. T, Oct. 10, 2022, ECF No. 16-20 ("Ltr. 20"); see Def.'s Facts ¶ 13. TDS rejected Quanta as the completion contractor, and this suit followed. Sokol Decl., Ex. U, Oct. 10, 2022, ECF No. 16-21 ("Ltr. 21"); see Def.'s Facts ¶ 14.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). When deciding questions of substantive law in diversity cases, federal courts are bound by state court decisions and state statutes. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). "In a diversity case, where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 186 (9th Cir. 1989). The Court may look to "well-reasoned decisions from other jurisdictions" when predicting how the state's highest court would decide an issue. Takahashi v. Loomis Armored Car Serv., 625 F.2d 314, 316 (9th Cir. 1980). The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Munden v. Stewart Title Guar. Co., 8 F.4th 1040, 1044 (9th Cir. 2021).

## DISCUSSION

Sureties seek a judgment declaring that TDS breached the bonds by "taking over" the three projects, which deprived Sureties of their rights under the bonds. Pls.' Br. at 8–13. For the following reasons, the Court denies the Sureties' motion.

1:22-cv-00339-CRK

**Applicable Law**

As a preliminary matter, the Court must determine which state's law applies to the bonds. See Gen. Signal Corp. v. MCI Telecomm. Corp., 66 F.3d 1500, 1505–06 (9th Cir. 1995). In accordance with Idaho's choice-of-law rules, the Court concludes that the parties have properly elected to apply Wisconsin law to Bonds No. 1, 2 & 3.

Federal courts sitting in diversity apply state substantive law, Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), and this doctrine extends to the interpretation of surety contracts, Standard Accident Ins. Co. of Detroit, Mich. v. Winget, 197 F.2d 97, 99 (9th Cir. 1952). When exercising its diversity jurisdiction, the court follows the choice of law rules of the state in which it sits. Klaxon v. Stentor Electir Mfg. Co., 313 U.S. 487, 496–97 (1941). Idaho has adopted the approach of the Restatement (Second) of Conflict of Laws § 187 (1971) that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." See Cerami–Kote, Inc. v. Energywave Corp., 116 Idaho 56, 58 n.1 (1989); Ward v. Puregro Co., 128 Idaho 366, 368–69 (1996). As with other forms of contract, if the parties have selected a particular state as forum to govern a surety agreement, the court generally applies the law of that state to the agreement. Cf. In re Miller, 853 F.3d 508, 519 (9th Cir. 2017) (applying California law).

Here, all three bonds contained a forum selection clause as part of the incorporated Master Agreement selecting Wisconsin law as applicable in any dispute. See Master Agreement ¶ 8.8. The parties agree that Bond No. 1 related to work to

**MEMORANDUM DECISION AND ORDER - 5**

1:22-cv-00339-CRK

be performed in Garden City and the Township of Boise, Idaho.[2] Pls.' Facts ¶ 2; Def.'s Facts ¶ 4. Under the Second Restatement approach, adopted by Idaho, the law of the state chosen by the parties to govern their contractual rights and duties will be applied by default. See, e.g., Harmon v. State Farm Mut. Auto. Ins. Co., 162 Idaho 94, 98–99 (2017) (concluding that Alaska law applied to a motorhome insurance policy based on parties' choice-of-law provision). Therefore, the forum selection clause in Bond No. 1 is valid, and the Court applies Wisconsin law.

Similarly, the parties do not dispute that the construction work related to Bonds No. 2 & 3 was supposed to occur in Spokane and Spokane Valley, Washington. Pls.' Facts ¶¶ 3, 4; Def.'s Facts ¶ 4. These two bonds contained the same choice-of-law provision as Bond No. 1, selecting Wisconsin law to apply to any dispute. See Master Agreement ¶ 8.8. However, TDS argues that pursuant to the Revised Code of Washington, § 48.18.200 (2020), Washington prohibits choice-of-law clauses for insurance contracts to be construed according to the laws of any other state. See R.C.W. § 48.18.200(1)(a) ("no insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, shall contain any condition, stipulation, or agreement . . . requiring it to be construed according to the laws of any other state or country"); [TDS] Resp. Pls.' Mot., 7–8, Oct.

---

[2] Sureties state that the Master Agreement chooses the law of Wisconsin to govern interpretation of all three bonds. See Pls.' Br. at 7, n.4. TDS does not dispute that Wisconsin law applies to Bond No. 1—only whether it applies to the remaining bonds. See Def.'s Br. at 7 ("Washington law applies to the Bonds issued for the two Washington State projects (Build Orders 2 and 3)."). The parties have identified no authority suggesting that the choice of law clause is invalid under Idaho law, nor has the Court discovered such authority.

**MEMORANDUM DECISION AND ORDER - 6**

1:22-cv-00339-CRK

31, 2022, ECF No. 23 ("Def.'s Br."). Therefore, TDS concludes that because Bonds No. 2 & 3 insured risks located in Washington, the choice-of-law provision in the Master Agreement is void as to those bonds, and Washington law should apply under public policy principles. Id. Sureties do not dispute this argument, but submit that the Court need not resolve this dispute, as the same legal standards apply regardless of which state's law applies. See Pls.' Reply Suppt. Partial Summ. J. Mot., 5–6, n.3 Nov. 10, 2022, EFC No. 26 ("Pls.' Reply").

TDS's argument is misplaced. Although Washington law may prohibit choice-of-law provisions such as the provision implicated in this case, the Court does not apply Washington's choice-of-law rules—it applies the rules of the forum, Idaho. Klaxon, 313 U.S. at 496–97. Thus, because Idaho adopts the approach of the Second Restatement, the Court recognizes the validity of the choice-of-law provisions in Bonds No. 2 & 3, and applies Wisconsin law.

**Breach of Contract**

Sureties request that the Court declares Bonds No. 1, 2 & 3 void, on the grounds that TDS prevented Sureties from proceeding with their right of election under § 3(a) of the bonds. Pls.' Br. at 8–13. Specifically, Sureties argue that TDS: (1) provided insufficient notice of Quanta's default, (2) improperly began obtaining bids through a request for proposal process, (3) hindered Sureties' election by refusing to provide requested information, and (4) breached the bonds by rejecting Sureties' choice of Quanta as replacement contractor. Id. TDS counters that not only has it acted in accordance with the bonds, Def.'s Br. at 10, but that Sureties anticipatorily breached the bonds by declaring them void, making unreasonable demands for

**MEMORANDUM DECISION AND ORDER - 7**

1:22-cv-00339-CRK

information, and re-selecting Quanta as a replacement contractor. Def.'s Br. at 9–19. For the reasons that follow, Sureties have not shown entitlement to judgment as a matter of law.

Contracts for surety are treated as insurance contracts. Wiegel v. Sentry Indem. Co., 94 Wis. 2d 172, 179 (Ct. App. 1980). "The lodestar of contract interpretation is the intent of the parties." Huml v. Vlazny, 293 Wis. 2d 169, 196 (2006) (citing Dieter v. Chrysler Corp., 234 Wis. 2d 670, 679 (2000)). In ascertaining the intent of the parties, contract terms should be given their plain or ordinary meaning. Goldstein v. Lindner, 254 Wis. 2d 673, 681 (Ct. App. 2002). "If [the parties'] intent can be determined with reasonable certainty from the face of the contract itself, there is no need to resort to extrinsic evidence." Eden Stone Co. v. Oakfield Stone Co., 166 Wis. 2d 105, 116 (Ct. App. 1991). "Words or phrases in a contract are ambiguous when they are susceptible to more than one reasonable interpretation." Just v. Land Reclamation, Ltd., 155 Wis. 2d 737, 744–45 (Ct. App. 1990). Summary judgment "will not lie where arguably ambiguous provisions of a contract raise a question as to the intent of the parties." Riley Construction Co. v. Schillmoeller & Krofl Co., 70 Wis. 2d 900, 907–908 (1975); see also Norwest Bank Wis. Ne. v. Angelich, 164 Wis. 2d 753, *7 (Ct. App. 1991) (unpublished).

Wisconsin follows the ordinary formulation for breach of contract; to prevail, the plaintiff must show a valid contract, that the defendant breached the contract, and damages flowing from that breach. Northwestern Motor Car, Inc. v. Pope, 51 Wis. 2d 292, 296 (1971); see also Matthews v. Wis. Energy Corp., 534 F.3d 547, 553 (7th Cir. 2008) (applying Wisconsin law). If there is a valid contract between plaintiff

**MEMORANDUM DECISION AND ORDER - 8**

1:22-cv-00339-CRK

and defendant, "breach" of that contract has been defined as "failure of the defendant to do what it undertook to do." Brew City Redev. Grp., LLC v. Ferchill Grp., 289 Wis. 2d 795, 807 (Ct. App. 2006), aff'd 297 Wis. 2d 606 (2006). Similarly, the Restatement (Second) of Contracts § 235 (1981) states that "When performance of a duty under a contract is due any non-performance is a breach." A breach may also be anticipatory: "The disclaimer of a contractual duty is a breach of contract even if the time specified in the contract for performing the duty has not yet arrived. It is what is called anticipatory breach." Wis. Power & Light Co. v. Century Indem. Co., 130 F.3d 787, 793 (7th Cir. 1997) (applying Wisconsin law). The court has elaborated that "one way of breaking a contract is to repudiate it -- to make clear that one does not intend to honor its terms." Sunds Defibrator AB v. Beloit Corp., 930 F.2d 564, 566 (7th Cir. 1991) (applying Wisconsin law).

Parties to a contract also have a duty of good faith in performance. See Bozzacchi v. O'Malley, 211 Wis. 2d 622, 626 (Ct. App. 1997) ("Every contract implies good faith and fair dealing between the parties to it"). The duty of good faith obliges each party not to intentionally do anything to prevent the other party either from carrying out its part of the agreement, or from receiving the benefits of the contract. Tang v. C.A.R.S. Prot. Plus, Inc., 301 Wis. 2d 752, 781 (Ct. App. 2007). Whether a party has breached its implied duty of good faith is a question which can be resolved on summary judgment. Wis. Nat. Gas Co. v. Gabe's Constr. Co., 220 Wis. 2d 14, 24 n.6 (Ct. App. 1998).

Here, Sureties argue that TDS breached the bonds at several points, first of all when it sent Sureties letters on June 24 and July 6 declaring Quanta in default and

**MEMORANDUM DECISION AND ORDER - 9**

declaring that TDS was "taking over for cause." Pls.' Br. at 8. Specifically, Sureties argue that TDS's letters were not sufficient notice under ¶ 2 of the bonds, that TDS was not allowed to solicit bids under the bonds, and that these actions deprived Sureties of their ability to mitigate damages. Id at 8–9. As a preliminary matter, neither the bonds nor the Master Agreement contain any provision relating to TDS's ability to solicit bids. Therefore under the plain language of the bonds, this argument fails. See Goldstein, 254 Wis. 2d at 681. Additionally, it does not follow from the undisputed facts of the case that TDS's letters, however construed, prevented Sureties from making an election under ¶ 3. Despite their dispute with TDS, Sureties allege that they "properly elected to proceed under Paragraph 3(a) of the Bonds," and that they did so in a timely manner. Pls.' Br. at 11. Thus, Sureties cannot consistently claim that TDS prevented them from exercising a contractual right that Sureties, claim they later exercised.[3]

Sureties' argument that TDS gave insufficient notice is also not supported by the undisputed facts and the plain language of the bonds. Paragraph 2 of each bond specifies that:

> If the Contractor is in default of the Construction Contract and TDS, by written notice to the Contractor and the Surety, declares the Contractor to be in default and terminates the right of the Contractor to proceed, the Surety shall thereupon promptly notify TDS in writing as to which of the actions permitted to the Surety in Paragraph 3 it will take.

Bond Nos. 1, 2 & 3, ¶ 2. Sureties received three letters from TDS each containing the following language, which Sureties deem insufficient notice under ¶ 2:

---

[3] Sureties also argue that TDS breached the bonds by preventing their election of Quanta as a completion contractor, which is discussed separately below.

**MEMORANDUM DECISION AND ORDER - 10**

1:22-cv-00339-CRK

> I am writing to provide Quanta (and its sureties) with formal notice that TDS is taking over for cause [the Build Order] due to Quanta, and its sureties, failure to correct, or make arrangements to correct, defaults of Quanta's obligations under [the Build Order] and the Agreement.

Ltrs. 13, 14, 15. Comparing the language of the bonds, which requires notice (1) to Sureties (2) of Quanta's default and (3) terminates Quanta's right to proceed, with TDS's letters, it is unclear what deficiency Sureties have identified. See Bond Nos. 1, 2 & 3, ¶ 2. Therefore, because the plain language of the bonds contains no latent ambiguity, see Land Reclamation, 155 Wis. 2d 744–45, and TDS appears to have met the three parts of the notice provision, the Court does not conclude that TDS breached the provision through its letters. Additionally, the notice provision is framed in the conditional; only "If" TDS provides notice are Sureties' obligations under ¶ 3 triggered. See Bond Nos. 1, 2 & 3, ¶ 2. So Sureties cannot coherently claim that TDS "deprived" them of a right through improper notice, when that right itself is conditioned upon successful notice.

Sureties next claim that TDS breached its duty of good faith by refusing to accede to Sureties' requests for a 60-day extension of time and certain information related to the projects. Pls.' Br. at 10. Citing Idaho law, Sureties argue that failure to provide this "industry standard" information "significantly impair[ed] the benefit of the contract," such that it constituted a breach of the bonds. Id. (quoting Tri-State Elec., Inc. ex rel. Apex Enters. v. Western Sur. Co., 2017 WL 123426 at *10 (D. Idaho Jan. 11, 2017)). In light of the circumstances surrounding the Sureties' request, it does not appear that TDS acted in bad faith. As TDS points out, no provision in the bonds requires that it give beyond 30 days for Sureties to make an election, or that it

**MEMORANDUM DECISION AND ORDER - 11**

1:22-cv-00339-CRK

provide particular information. Def.'s Br. at 12. Although under some circumstances a failure to cooperate may be unreasonable, here TDS was simply 'standing on the contract.' Compare Williamson v. Mills, 350 Wis. 2d 507, *3 (Ct. App. 2013) (unpublished) (lender refusal not to extend loan period not bad faith) with C.A.R.S., 301 Wis. 2d at 781 (auto warranty company's unreasonable delays in inspecting engine, per contract, were bad faith). TDS also gave a reason for its refusal; in its July 18 letter to Sureties, it explained that:

> such an extension would be highly prejudicial to TDS as the losses to TDS due to Quanta's defaults are massive and are mounting on a daily basis. You provide no guarantee in your letter that the Sureties will live up to their obligations if given the requested extension. 60 additional days of losses to TDS will be very significant.

Ltr. 19 at 2. In light of the fact Sureties had already declared the bonds void in their July 8 letter to TDS, Ltr. 16 at 3, TDS's unwillingness to acquiesce to additional terms under the circumstances does not suggest bad faith. Additionally, the eighteen-point list of information requested by Sureties was sizable, and included, among other items, copies of "all letters, memoranda, emails, Requests for Information and responses thereto, phone notes, records of conversation and any other correspondence or communications between TDS . . . and Quanta or any other party on this project." Ltr. 18 at 2–3. Tracking down relevant communications alone would presumably be a significant burden, to say nothing of the other seventeen items. TDS's unwillingness to do so at this stage without a specific contractual obligation suggests pragmatism—not bad faith.

Sureties also claim that TDS breached the bonds by refusing to allow Sureties to exercise their right to select a contractor under ¶ 3. Pls.'s Br. at 10–11. Sureties

**MEMORANDUM DECISION AND ORDER - 12**

1:22-cv-00339-CRK

explain that on July 21, they properly elected to proceed under ¶ 3(a) to take over the projects themselves, designating Quanta as the completion contractor. Id.; see Ltr. 20 at 2. Therefore, Sureties argue that when TDS responded on July 22 and rejected Sureties' choice of Quanta, it breached the bonds. Ltr. 21 at 2 ("The Sureties' purported election of Quanta as the replacement contractor for Quanta, the defaulting contractor, is rejected.") Sureties cite two non-binding opinions to support their argument that an obligee must allow a surety to proceed with the completion contractor of its choosing, even if that contractor is the defaulting principal. Pls.' Br. at 11. In St. Paul Fire & Marine Ins. Co. v. VDE Corp., 603 F.3d 119, 121–25 (1st Cir. 2010), the First Circuit held that an obligee breached a bond when it declared a surety in default, and denied the surety the ability to assign work to a previously defaulted contractor. Similarly, in St. Paul Fire & Marine Ins. Co. v. City of Green River, 93 F. Supp. 2d 1170, 1178–79 (D. Wyo. 2000), the court held that an obligee did not have the right to terminate a surety when that surety elected to use a defaulted contractor over obligee's specific protest, and that the purported termination rendered the bond null and void.

The terms of the bond do not expressly permit or forbid Sureties from rehiring Quanta as a completion contractor upon default, if Sureties elect to take over the projects. Bonds 1, 2 & 3, ¶ 3(a). The language of the bonds states only that Sureties may "[p]roceed itself or through others acting on its behalf . . . ." Id. Sureties suggest that the term "others" is inclusive of Quanta, while TDS argues that "others" should be interpreted as "contractors other than Quanta." Pls.' Br. at 13; Def.'s Br. at 19. Sureties' argument is bolstered by reading ¶ 3(a) in conjunction with ¶ 3(b), which

**MEMORANDUM DECISION AND ORDER - 13**

1:22-cv-00339-CRK

provides that "with the prior written consent of TDS," Sureties may opt to put out bids and proceed with a new contractor under the bonds. Compare Bonds 1, 2 & 3, ¶ 3(a) with Id. ¶ 3(b). There is no such provision in ¶ 3(a), suggesting that Sureties may pick a contractor without TDS's consent. TDS cites the dictionary definition of "others" in its own support, as "being the one or ones distinct from that or those first mentioned or implied." Def.'s Br. at 19 (quoting Other, MERRIAM-WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/other (last accessed Oct. 30, 2022)). In the context of the whole agreement, TDS argues, where Quanta is referred to frequently by name, it would have been mentioned specifically as a possible completion contractor. Id. The plain language of the bonds does not reveal which interpretation is correct; thus, there is an ambiguity because "others" is "susceptible to more than one reasonable interpretation." Land Reclamation, Ltd., 155 Wis. 2d at 744–45.

It is well-established that a court should withhold summary judgment where a contract's provisions are ambiguous, and there is a dispute as to the parties' intent. See Norwest Bank Wis. Ne. v. Angelich, 164 Wis. 2d 753, *7 (Ct. App. 1991) ("Summary judgment is inappropriate when contractual provisions are ambiguous and the parties intent is disputed"); see also Riley Construction Co. v. Schillmoeller & Krofl Co., 70 Wis. 2d 900, 908 (1975) (where "intent of the parties to the subcontracts has become a disputed issue of fact, and it is well-settled that summary judgment does not lie . . . .").[4] In this case, the parties dispute the meaning of the

---

[4] See also, e.g., Lawler v. Lawler, 115 Wis. 2d 695, *2–*3 (Ct. App. 1983) (unpublished) (summary judgment denied when document arguably created a trust

**MEMORANDUM DECISION AND ORDER - 14**

term "others" in the bonds, as to whether the term implicitly included Quanta.  Pls.' Br. at 13; Def.'s Br. at 19.  Based on this disagreement, there is a question of the parties' intent in adopting this language.  Sureties have moved for summary judgment; however, intent is a question of fact, which precludes summary judgment.  See, e.g., Riley, 70 Wis. 2d at 908; see also Munden, 8 F.4th 1040 at 1044.  For this reason, the Court declines to enter judgment for Sureties on this issue.[5]

## CONCLUSION

In light of the foregoing, it is

**ORDERED** that Plaintiffs' motion for partial summary judgment is denied.

/s/ Claire R. Kelly
Claire R. Kelly, Judge[*]

Dated:    December 21, 2022
         New York, New York

---

or modified a mortgage) ("Summary judgment should not be granted unless the right to it is demonstrated with such clarity as to leave no room for controversy"); Younger v. Rosenow Paper & Supply Co., 51 Wis. 2d 619, 629–631 (1971) (summary judgment reversed when parties disputed the intended meaning of an employee bonus plan); Lemke v. Larsen Co., 35 Wis. 2d 427, 430–32 (1967) (summary judgment denied when parties disputed the meaning of one party's promise to "endeavor" to harvest crops).

[5] Because Sureties are not entitled to summary judgment that TDS breached the bonds, the Court need not and does not reach TDS's claims that Sureties anticipatorily breach the bonds.

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**MEMORANDUM DECISION AND ORDER - 15**